<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| VIRAG, S.R.L., a foreign corporation, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 14-4786 (KM) |
| | : | |
| v. | : | |
| | : | <u>OPINION</u> |
| SONY COMPUTER | : | |
| ENTERTAINMENT AMERICA LLC, | : | |
| and SONY COMPUTER | : | |
| ENTERTAINMENT, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| _____ | : | |

### I.   INTRODUCTION

This matter comes before the Court via a motion filed by Defendants Sony Computer Entertainment America LLC ("SCEA") and Sony Computer Entertainment, Inc. ("SCEI") to transfer this matter to the Northern District of California under 28 U.S.C. § 1404(a).   <u>See</u> Defs.' Mot., Nov. 6, 2014, D.E. 28-1.   Pursuant to Federal Rule of Civil Procedure 78, and Local Civil Rule 78.1, the Court decided this motion without oral argument.   For the reasons set forth below, the Court grants Defendants' motion, and will transfer this matter to the Northern District of California.

### II.   BACKGROUND

#### A.  Relevant Facts

On July 31, 2014, Plaintiff sued Defendants for: (i) violation of its right of publicity, (ii)

trademark infringement, (iii) trademark dilution, and (iv) unfair competition.   See Compl., at ¶¶ 26-52, July 31, 2014, D.E. 1.   The central issue in this case concerns Defendants' alleged unauthorized use of Plaintiff's trademark.   See id. at ¶¶ 26-52.   Plaintiff contends that since 2004, it has sponsored the Rally of Monza, which is a Formula One car race held in Monza, Italy. See id. at ¶ 1.   At the Rally, Plaintiff displayed banners with its "VIRAG®" mark.   See id. Plaintiff claims that Defendants' racing video games "Gran Turismo®5" and "Gran Turismo®6" (collectively "the Video Games") display unauthorized virtual versions of the registered "VIRAG®" mark.   See id. at ¶¶ 4-5, 14-15.

Plaintiff is an Italian company that markets and sells flooring products worldwide.   See id. at ¶¶ 1, 6.   None of Plaintiff's thirteen employees are U.S. citizens, or persons "legally admitted for the purpose of becoming permanent residents of the U.S."   See id.; see also Decl. of Mirco Virag ("Virag Decl.") in Opp'n to Defs.' Mot., at ¶¶ 2, 7, Dec. 1, 2014, D.E. 31-4.

Defendant SCEA is a Delaware limited liability company.   See Compl., at ¶ 7.   SCEA maintains its principal place of business in San Mateo, California, but is registered to do business in New Jersey.   See id.; see also Decl. of John Koller ("Koller Decl.") in Sup. of Defs.' Mot., at ¶ 3, Nov. 6, 2014, D.E. 28-2; Virag Decl., at Ex. 5, D.E. 31-5.   SCEA sells various games nationwide for Sony's PlayStation gaming system, including the Video Games at issue in this case. See Koller Decl., at ¶¶ 2, 6; see also Compl., at ¶¶ 7-8.   SCEA distributes and markets the Video Games from its California corporate headquarters.   See Koller Decl., at ¶¶ 6-7.

Defendant SCEI's corporate headquarters are in Tokyo.   See Koller Decl., at ¶¶ 5-6. SCEI is SCEA's foreign corporate affiliate; and, SCEI developed the Video Games in Tokyo. See Compl., at ¶¶ 7-8, 10; Koller Decl., at ¶¶ 5-6.   Likely because of SCEI's foreign corporate

residence, Plaintiff served SCEI's California based registered agent with the Summons and the

Complaint.   See Proof of Service, Sept. 5, 2014, D.E. 13.

**III.**   **ARGUMENTS**

       **A. Defendants' Motion**

      Defendants seek to transfer this matter to the Northern District of California, which is

SCEA's home district, because they allege that this case "bears no relation" to New Jersey.   See

Defs.' Mot., at 1.   Defendants claim that venue is improper in New Jersey, under 28 U.S.C.

§ 1391, because Defendant SCEA resides in San Mateo, California, and is subject to personal

jurisdiction there.   See id. at 5-6; see also Koller Decl., at ¶¶ 3-7.   Moreover, Defendants argue

that Plaintiff's claim arose in California because although Defendants sold the Video Games

nationwide, SCEA marketed, distributed, and sold the Video Games primarily from its California

corporate headquarters.   See Koller Decl., at ¶¶ 3-8.

      In addition, Defendants claim that private and public interests favor transferring this case.

See Defs.' Mot., at 5.   Defendants, for example, allege that the Court need not give Plaintiff's

chosen forum any deference because Plaintiff is a foreign corporation, which sued parties lacking

any relevant ties to New Jersey.   See Defs.' Mot., at 6-7; Compl., at ¶¶ 1,6; Virag Decl., at ¶¶ 6,

9; Koller Decl., at ¶¶ 3-6.   Indeed, Defendants contend that Plaintiff lacks meaningful connections

to this forum because, as an Italian corporation, Plaintiff maintains no offices or employees in New

Jersey.   See Def.'s Reply Br., at 2, Dec. 8, 2014, D.E. 33.

      Defendant SCEA specifically argues that the relevant evidence and witnesses in this case

are located in California, because that is where SCEA marketed, distributed, and sold the Video

Games.   See Defs.' Mot., at 8; Koller Decl., at ¶¶ 3-6.   SCEI, on the other hand, mainly favors

transfer "as it is much more convenient for it to litigate [in California] from Japan than New

Jersey."   See Defs.' Mot., 8.   In other words, SCEI seeks a transfer because of its corporate

affiliation with SCEA, which is conveniently located in California.   See Defs.' Reply Br., at 10;

Defs.' Mot., at 10 n.1.

### B.  Plaintiff's Opposition

Plaintiff asserts that this District is the proper venue because Defendants' alleged

trademark infringement occurred here given that Defendants sold the Video Games in New

Jersey.   See Pl.'s Opp'n Br., at 7-9, Dec. 1, 2014, D.E. 31.[1]   Plaintiff does not dispute that the

parties maintain no offices or employees in New Jersey.[2]   Instead, Plaintiff claims that it "has a

growing sales presence on the east coast of the United States."   See Virag Decl., at ¶ 8.   More

specifically, Plaintiff contends that it has established business relationships with distributors

located in New Jersey.   See id. at 5; see also Virag Decl., at ¶¶ 8-12.   As evidence, Plaintiff

---

[1] Defendants admit selling the Video Games "in the United States."   Koller Decl., at ¶ 6.   Even so, neither party submitted sales figures nor other evidence indicating the extent of Defendants' business dealings in New Jersey.

[2] In opposition, Plaintiff mistakenly relies on a motion seeking to transfer a different case, Voxpath RS, LLC v. LG Elec. U.S.A. ("Voxpath"), from the Eastern District of Texas to this District.   See Pl.'s Opp'n Br., at Ex. 1, D.E. 31-1.   Plaintiff argues that Defendants cannot now claim that New Jersey is an improper venue because, over four years ago in Voxpath, Defendants admitted strong business ties to this District.   See Pl.'s Opp'n Br., at 1-3, 9-10.

First, no Defendants in this case supported the motion to transfer in Voxpath.   Rather, Sony Corporation of America ("SCA"), which is headquartered in New York, submitted a declaration supporting transfer because SCA was registered to do business in New Jersey, and because it maintained offices in this state.   See Decl. of Steven E. Kober in Sup. of Defs.' Mot., at ¶¶ 1-5, Nov. 2, 2010, D.E. 31-1.   Because SCA is not a party in this case, whatever allegations it made in Voxpath have no bearing on the motion to transfer before this Court.   That is even truer here because Plaintiff has offered no evidence contradicting Defendants' assertions that they maintain no offices, employees, or evidence regarding this case in New Jersey.   See Koller Decl., at ¶¶ 3-4, 8.   Thus, the Court rejects Plaintiff's unsubstantiated argument that Defendants' participation in Voxpath somehow precludes transferring this matter to the Northern District of California.

provides four invoices demonstrating transactions occurring in 2010, 2012, and 2013 with three different New Jersey distributors, Materials Inc., WTP Corporation, and Carpet Workshop LLC. See Virag Decl., at Ex. A-C, D.E. 31-4.

Plaintiff further disputes that California is a more convenient venue than New Jersey. For example, Plaintiff contends that all of its relevant evidence and witnesses, particularly its employees, remain at the company's headquarters in Milan, Italy.   See Virag Decl., at ¶¶ 13-16. As a result, travelling to New Jersey is both more convenient and less expensive than California. See id. at ¶¶ 15-18.   One reason for this is that flights from Italy to New Jersey are shorter than flights from Italy to California.   See id. at ¶¶ 17-18.

In addition, Plaintiff argues that SCEA can obviously litigate in this District because SCEA has registered to do business in New Jersey since 2010.   See id. at Ex. 5, D.E. 31-5. Lastly, Plaintiff claims that the Court must defer to its preferred forum given that Plaintiff is a small family-owned business located in Italy, whereas Defendants are international companies with sufficient resources to litigate in New Jersey.   See Pl.'s Opp'n Br., at 13-15.

**IV.   DISCUSSION**

    **A.  Venue**

Under 28 U.S.C. § 1404(a), for the "convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   Section 1404(a) exists to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Ricoh Co. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993) (internal citations and quotations omitted).   The Third Circuit has recognized that the moving party bears the burden of

establishing the need for transferring the case "with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)."   Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756–57 (3d Cir. 1973).

Transfer is appropriate under Section 1404(a) if the defendant satisfies two factors: (i) that venue is proper in the transferee district, and (ii) that the transferee district can exercise personal jurisdiction over all parties.   See Shutte v. Armco Steel Corp., 431 F.2d 22, 24 (3d Cir. 1970).   If venue in the requested district is proper, then the Court must analyze a series of private and public factors to determine whether "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."   Jumara v. State Farm Ins., Co., 55 F.3d 873, 879 (3d Cir. 1995).

In all civil cases, 28 U.S.C. § 1391 determines proper venue.   Under § 1391(b), a civil action may be brought in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.[3]

Here, Plaintiff does not dispute that the Northern District of California is a proper venue. But, Plaintiff contends that its claim arose in New Jersey because SCEA sold the Video Games in this state.   See Pl.'s Opp'n Br., at 7-9; see also Compl., at ¶ 10.   Traditionally, "the focus of our

---

[3]  In this case, Section 1391(b)(1) and (b)(3) do not apply because Defendants do not reside in the same state, and because the Northern District of California is a proper venue.

venue inquiry in a Lanham Act trademark infringement case is the location where the unauthorized passing off takes place—whether that occurs solely within one district or in many." Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994).   For this reason, if trademark infringement occurs in multiple districts "then venue could be proper in more than one district."   Id. at 294.

In this case, SCEA's conduct is more relevant to the venue analysis because SCEI develops the Video Games in Japan.   Koller Decl., at ¶ 6.   It is undisputed that SCEA sold the Video Games "throughout the United States, including in this district."   Compl., at ¶ 9. However, SCEA distributed and marketed the Video Games from California, either at its San Mateo headquarters or elsewhere in California.   See Koller Decl., at ¶¶ 6-7.   Therefore, although infringement may have occurred in multiple districts, including in New Jersey, venue is proper in California because "a substantial part of the events or omissions" relating to Plaintiff's claims occurred there.   See 28 U.S.C. § 1391(2); see also Thompson v. NFL, No. 13-367, 2014 WL 1646929, at *3 (W.D. Pa. Apr. 24, 2014) (concluding venue is proper in Minnesota because Defendant regularly transacted business there and some of the infringing images were "shown or filed in Minnesota."); Culp v. NFL Prod. LLC, No. 13-7815, 2014 WL 4828189, at *4 (same).

Additionally, SCEA's corporate headquarters and "approximately 870 employees" are located in San Mateo, California.   Koller Decl., at ¶ 3.   Therefore, the Court accepts as true SCEA's assertion that all of its relevant documents concerning this case are located in California, and not in New Jersey.   See id. at ¶¶ 6-7.   For the same reason, SCEA's assertion that all of its known witnesses are located in California appears credible.   See id. at ¶ 9.   Thus, under 28 U.S.C. § 1391(b)(2), the Northern District of California can serve as the proper venue for this case.

The Court next concludes that the Northern District of California can properly exercise personal jurisdiction over Defendants.   First, Plaintiff has raised no jurisdictional issues regarding SCEI, perhaps because it served SCEI with the Summons and the Complaint in California.   See Proof of Service, Sept. 5, 2014, D.E. 13.   The transferee district can likewise exercise personal jurisdiction over SCEA because it resides, and regularly conducts business in California.   See Koller Decl., at ¶¶ 1-2, 6-7; Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 633 (D.N.J. 2004) (explaining "general jurisdiction requires a very high threshold of business activity.").   And it is clear that the Northern District of California can properly exercise jurisdiction over SCEA because it is headquartered in San Mateo, California.

### B.  Private Factors

Having decided that venue is proper in the transferee district, the Court must next analyze whether private and public interests favor transferring this case.   The private interest factors include: (i) plaintiff's choice of forum; (ii) defendant's preference; (iii) where the claim arose; (iv) the parties' convenience as indicated by their relative physical and financial condition; (v) witness convenience; and (vi) the location of books and records.   See Jumara, 55 F.3d at 879.

### i.  Plaintiff's Choice of Forum

Upon analyzing the record, the Court concludes that three of the six private interest factors weigh strongly in favor of transfer to the Northern District of California.

First, Plaintiff's choice of forum weighs in favor of a transfer.   See Ricoh, 817 F. Supp. at 480-81.   In general, a plaintiff's chosen forum "is considered to be presumptively correct."   Wm. H. McGee & Co. v. United Arab Shipping Co., 6 F. Supp. 2d 283, 290 (D.N.J. 1997). Nevertheless, courts grant a plaintiff's choice less weight if "plaintiff has chosen a foreign forum

or [if] the choice of forum has little connection with the operative facts." Culp, 2014 WL 4828189, at *4; see also Kelly-Brown v. Winfrey, No. 11-4360, 2011 WL 5325596, at *3 (D.N.J. Nov. 3, 2011) ("Plaintiffs are citizens of Florida [and appear] to have no connection to this state other than their selection of a New Jersey attorney to represent them").

In Ricoh, for example, the Court rejected a Japanese corporate plaintiff's argument that New Jersey was its "home turf." 817 F. Supp. at 481. There, the court did not defer to Plaintiff's chosen forum because Plaintiff was a Japanese corporation, which maintained "no offices, manufacturing facilities or distributing facilities in New Jersey." Id.

Similarly, in Kelly-Brown, the court decided that New Jersey was an improper forum in a trademark dispute. 2011 WL 5325596, at *3. Just like this case, plaintiffs in Kelly-Brown unsuccessfully argued that a substantial part of the case's relevant facts occurred in this District because Defendants marketed and distributed the allegedly infringing products in New Jersey. See id. at *2. The Court disagreed and transferred the action to New York because defendants' business operations were located there, and because defendants' nationwide distribution of the alleged infringing product did not "place New Jersey in a superior position to the other 49 states in which Plaintiffs contend infringement occurred in the same manner." Id. at *3.

Here, the record also establishes that the Court need not defer to Plaintiff's chosen forum. Defendants sold the allegedly infringing Video Games nationwide; thus, a substantial part of Plaintiff's claims did not solely arise in this District. To the contrary, as the Court has already determined, a substantial part of Plaintiff's claims arose in the Northern District of California because that is the location from which SCEA distributed and marketed the allegedly infringing games. See Culp, 2014 WL 4828189, at *4 ("[Plaintiffs'] claim centers on the airing of their

images which occurs nationally and even worldwide . . . Therefore, the central facts of this lawsuit do not occur primarily within the forum state."); see also Ricoh, 817 F. Supp. at 483 ("Because [defendant] has demonstrated that the operative facts to this litigation are not centered in New Jersey . . . [plaintiff's] choice of forum . .    . is entitled to lessened deference.").

The Court also cannot conclude that Plaintiff's alleged New Jersey business ties demonstrate a meaningful connection to this forum.   Plaintiff claims that it has established business relationships with New Jersey distributors.   See Virag Decl., at ¶¶ 8, 10.   However, the four invoices submitted in support of that claim barely total $2100, and reflect no sales to New Jersey businesses after 2013.[4]   Ultimately, then, the first factor heavily weighs in favor of transfer.

### ii.  Defendants' Choice of Forum

California has far more substantial connections with the pending claims.   Indeed, SCEA's corporate headquarters are in California, and California is where SCEA markets, distributes, and sells the Video Games.   See Koller Decl., at ¶¶ 3- 6; see also Compl., at ¶¶ 7-8.

There is no dispute that SCEI developed the Video Games in Japan, which is where SCEI resides.   See Koller Decl., at ¶¶ 5-6.   However, any trademark infringement occurring in the United States took place because the Video Games were mainly distributed and marketed from SCEA's California headquarters.   See Koller Decl., at ¶¶ 3- 6; see also Compl., at ¶¶ 7-8.   For

---

[4] Although Plaintiff did not submit evidence indicating non-New Jersey sales, the sales within this District do not demonstrate that Plaintiff maintains strong business connections in New Jersey.

Here, Plaintiff submitted invoices indicating transactions with the following New Jersey companies: (i) Materials Inc., dated November 20, 2013, and totaling €1,033.13; (ii) Materials Inc., dated May 30, 2013, and totaling €187.82; (iii) WTP Corporation, dated April 23, 2012, and totaling €202.95; and (iv) Carpet Workshop LLC, dated October 6, 2010, totaling $567.45.   Taken together, and adjusting for present currency conversion rates, Plaintiff's New Jersey sales total approximately $2,109.39.   See Virag Decl., at Ex. A-C, D.E. 31-4.

this reason, SCEI's most relevant connections are also in California because that is where its corporate affiliate, SCEA, regularly conducts business relevant to the claims at issue here.   See id. at ¶¶ 5-9.   It is also more convenient for SCEI to travel to California from Japan, especially because, as set forth below, all of the relevant evidence and witnesses in this case are located there. The second factor, therefore, also suggests that transfer is appropriate.   See N. Am. Dental Wholesalers, Inc. v. Danaher Corp., No. 11-247, 2011 WL 3606866, at *5 (E.D. Pa. Aug. 15, 2011) ("[The Court finds that because less deference is afforded to Plaintiff's choice of forum, Defendant's choice of forum should be given more weight, and in this matter, Defendant's choice of forum is the Central District of California.").

### iii.   Where the Claim Arose

Courts have found that nationwide selling or marketing of an infringing product militates against transfer.   See Kelly-Brown, 2011 WL 5325596, at *4 ("[Broadcasting infringing images] to a New Jersey audience does not necessarily make New Jersey the "locus" of the alleged trademark infringement, as compared with other states where these activities also occurred."); see also Culp, 2014 WL 4828189, at *5 (concluding factor was "neutral" because "plaintiffs' claims concern the airing of their images which is not limited to New Jersey.").

Here, the Court similarly concludes that this factor is neutral given Defendants' nationwide sale of the Video Games.

### iv.   The Convenience of the Parties

The parties' relative convenience based on their physical and financial condition is also a neutral consideration because all parties reside out-of-district and must travel either to this District or to the Northern District of California.   Unlike Defendants, which are large multi-national

corporations, Plaintiff is a family-owned Italian corporation with less than twenty employees. Arguably, then, Defendants can better manage any increased travel or litigation costs associated with transfer.   The parties have not submitted any proof specifying increased travel or litigation costs resulting from transferring this matter.   Instead, Plaintiff alleges this District is more convenient because a flight from Italy to New Jersey is 1,932 miles less than a flight from Italy to California.   See Pl.'s Opp'n Br., at 10-11; Virag Decl., at ¶¶ 15-19.   That alone is insufficient because, as a foreign party, Plaintiff "accepted the fact that litigation will occur in a forum thousands of miles from its home turf and will cause it significant inconvenience."   Ricoh, 817 F. Supp. at 485.

### v.  The Convenience of the Witnesses

A forum's inability "to compel the attendance of witnesses at trial is an important factor weighing in favor of transfer."   Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A., No. 10-6457, 2011 WL 3329087, at *5 (D.N.J. Aug. 2, 2011) (citations omitted).   When considering this factor, however, the pertinent inquiry is on the convenience of non-party witnesses.   See In re Consol. Parlodel Litig., 22 F. Supp. 2d 320, 324 (D.N.J. 1998).

There is no dispute that the parties maintain neither offices nor employees in New Jersey. See Virag Decl., at ¶¶ 6-7, 19; see also Koller Decl., at ¶¶ 4-5, 7-8.   SCEA asserts that any witnesses connected to this case reside "at its headquarters in San Mateo California, or elsewhere in California."   Koller Decl., at ¶ 9.   Of the three parties, only SCEA has any witnesses located in the country because Plaintiff's witnesses primarily reside in Italy, while SCEI's witnesses reside in Tokyo, Japan.   See Virag Decl., at ¶¶ 6-7, 19; see also Koller Decl., at ¶¶ 4-5, 7-8.   This factor, therefore, weighs in favor of transfer.   See, e.g., Platinum Partners, 2011 WL 3329087, at *5.

### vi.  Location of Books and Records

This factor is neutral because neither party has demonstrated that adjudicating this case in New Jersey, or transferring it to California, will cause books or records to become unavailable or significantly more burdensome to produce.  See Culp, 2014 WL 4828189, at *7 ("In our electronic age, this factor seems to carry less consideration [because books and records] are already in electronic format or can be saved electronically, and easily transported.").

### C.  Public Factors

Lastly, the Court analyzes the "public interest" factors, which are: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." Jumara, 55 F. 3d at 879-80 (internal citations omitted).  When evaluating the public interest factors "the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum."  Lacey v. Cessna Aircraft Co., 862 F.2d 38, 48 (3d Cir. 1988) (internal quotation and citations omitted).

Because Defendants sold and marketed Video Games nationwide, New Jersey lacks a connection to the alleged infringement that is any more significant than the other states where that same activity also occurs.  See Culp, 2014 WL 4828189, at *7 ("[T]he distribution of the films . . . is national, and even international, in scope.  There is no distinct New Jersey controversy.").  Again, no party maintains offices, employees, relevant documents, witnesses, or even a principal place of business in New Jersey.  Simply put, New Jersey maintains scant

interest, public or otherwise, in adjudicating this case.   Of the two alternatives, solely California

maintains a direct connection, and a strong interest, in this case given that SCEA resides, and

regularly conducts business, and distributed the Video Games from its corporate headquarters.

The remaining public interest factors do not defeat that conclusion.   For these reasons, and in

the interests of justice, the Court finds that the public interest factors also tip the scales in favor

of transfer.   See 28 U.S.C. § 1404(a).

**V.**   **CONCLUSION**

For the reasons set forth above, the Court will grant Defendants' motion, and order that

this matter be transferred to the United States District Court for the Northern District of California.

An appropriate Order accompanies this Opinion.


**Michael A. Hammer**
**UNITED STATES MAGISTRATE JUDGE**


Date: March 30, 2015

14